# WICKERS v. UPHAM.

PATENTS; INTERFERENCE.

1. Where the junior parties to an interference, although they may have conceived the invention of the issue prior to the date of the conception by the senior party, failed to reduce it to practice before their filing date, which was subsequent to that of the senior party, or to exercise diligence in reducing to practice before their rival entered the field, they are not entitled to an award of priority.

2. *Wickers* v. *McKee, ante,* 4, applied and followed.

No. 385.   Patent Appeals.   Submitted November 24, 1906.   Decided February 5, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are stated in the opinion.

*Messrs. Griffin & Bernhard* for the appellants.

*Mr. Walter F. Rogers* and *Mr. Jacob Felbel* for the appellee.

Mr. Justice McCOMAS delivered the opinion of the Court:

This is another of the series of interferences which have been considered together, in which Wickers and Furlong, appellants here, were also appellants in the other cases of the series; and this case relates especially to the manufacture of printing plates. The three tribunals of the Patent Office concur in awarding priority of invention of the issue of this interference to Burt F. Upham, the senior party, and the issue of this interference is as follows:

"1. The herein described process of producing printing sur-

faces, which consists in first forming a relief printing surface in a thin metallic plate, supporting the same upon a yielding backing, and finally forcing into the face thereof a comparatively unyielding surface varying in profile in direct proportion to the lightness of the shades to be printed by the different sections of the printing surface.

"2. The process of 'making ready' the printing surface of a printing block, which consists in applying to one side of the printing block a 'relief' form having parts of its printing surface raised, said raised parts corresponding with certain parts of the subject to be printed, covering the other side of the printing block with yielding material, and then subjecting the printing block and the said 'relief' form while in contact with one another to pressure, thereby altering the level parts of the printing surface of the printing block so as to obtain a correctly shaded impression in a single print-operation.

"3. The process of making ready the printing surface of a printing block, which consists in applying to the face of the printing block a 'relief' form having raised parts corresponding to the light shaded parts of the subject to be printed, covering the back of the printing block with yielding material, and then subjecting the printing block and said 'relief' form to pressure, thereby setting back the level of those parts of the printing surface of the block which correspond to the lightly shaded parts of the subject to be printed below the level of those parts of the printing surface of the printing block which correspond to the darkly shaded parts of the subject to be printed, so as to obtain a correctly shaded impression in a single printing operation."

We have discussed the case of Wickers and Furlong in the companion interference in No. 386 Patent Appeal Docket so fully [*ante, 4*] that we need not repeat here the matters relevant to this issue discussed in that case. Mainly for the reasons there stated, the three tribunals of the Patent Office agree that Wickers and Furlong were not the prior inventors of the issue of this interference. The Examiner of Interferences decided in this case, as in the others concerning related issues that Wickers and Furlong conceived the invention defined in counts

one and two of this issue in 1897, but did not reduce it to practice prior to their filing date, January 22, 1902, and therefore are not entitled to prevail in this interference.

We concur in his conclusion that Albert, who has taken no testimony, and who filed his application involved in this interference June 15, 1901, should be limited to his record date; but if he be given the benefit of certain of his foreign patents introduced here, the date of his conception and reduction to practice would be no earlier than April 16, 1901. This date would not benefit him nor entitle him to prevail over Upham, who conceived this invention in 1899, and filed his application on January 22, 1901. Therefore the Examiner held that Upham was entitled to prevail over Wickers and Furlong, who had a prior conception of the invention here involved, and who were not diligent in reducing it to practice after Upham's entry into the field. He also decided that Upham was entitled to prevail over Albert, whose date of conception and reduction to practice is subsequent to Upham's filing date.

The Examiners-in-Chief affirmed the decision of the Examiner of Interferences. They observed that the first and third counts of this issue are specific in that they require that the pressure by means of which the graduations in the printing surface of the plate are produced shall be applied to the face of the plate, instead of to the back thereof, as is required in other issues of the series of interferences to which this interference belongs. The Examiners-in-Chief also remarked that count two in this case covers, broadly, subjecting one side of a printing block supported upon a yielding body of material to the action of a "relief" form under pressure, thereby altering the level parts of the printing surface, and they hold that, even if Wickers and Furlong be entitled to a date of conception, which the Examiners say they are not, although their application of January 22, 1902, discloses the subject-matter of this count, they were not exercising diligence when Upham entered the field, and therefore, if Upham were only entitled to the date of his interfering application, priority of invention had been properly awarded to Upham. Albert here disappears. Wick-

ers and Furlong alone appeal to the Commissioner, who affirmed the decision of the Examiners-in-Chief, and also concurred with them upon the grounds stated by them; and the Commissioner also determined that Upham conceived the invention in 1899, but did not reduce it to practice prior to the filing date of his application, January 22, 1901. The Commissioner therefore held that Upham was entitled to the award of priority, whether he was the first or last to conceive the invention. From this third adverse decision in the Patent Office, Wickers and Furlong appealed to this court.

Upham alleged that he conceived the invention involved in the issue of this interference, in March, 1899, and reduced it to practice about three months thereafter. He was then employed in the establishment of the Youth's Companion in Boston, when the idea came to him that he could treat a plate by putting an "overlay" or "make-ready" in the face of the plate.

Appellants' counsel contend that Upham's testimony that in the summer of 1899 he produced a satisfactory plate having a graduated printed surface, and that he made the plate by using a reverse overlay upon the face of the plate, with a thin piece of cardboard between the reverse overlay and the plate, and subjected it to pressure, and that the plate produced in this manner was printed from without the use of any overlay upon the impression cylinder, is not sufficiently corroborated, and that evidence is lacking, because neither the plate nor the reverse overlay used, nor an imprint from the plate, was produced. It is insisted that his exhibits were all recently made. It is argued that his testimony of the conception of the invention and all he did prior to March, 1900, must be considered as abandoned experiments, and that a memorandum prepared by Upham and signed by witnessess at the last-mentioned time shows his process is crude, and that Upham is not entitled to priority over Wickers and Furlong in respect of the first and second counts of this issue. Appellants' counsel concede that as to the third count of this issue Wickers and Furlong can claim no priority because there is no foundation for it in their application.

Upham testified that in October, 1900, he caused to be made

for him, by an electrotyper, a thin copper plate, from which, in November following, he had made two original half tones which he treated by his process and used on a printing press. He described several other experiments in the same year of like character, and used them on a printing press without a make-ready on the impression cylinder. In March, 1900, he wrote a description of one of his processes and of the object of the process, which he signed and caused to be signed by two witnesses. He testified to a disclosure to his attorney late in 1899, and his application was filed on January 21, 1901, thereby becoming the senior party in the series of these interferences.

James Humphry, in charge of the press department of the Youth's Companion, testified that before Upham went to Texas, late in 1899, he had experimented on cuts, trying to do away with overlays and pressing a reverse overlay into the face of the plate. Humphry helped Upham procure the thin copper plate, and testifies that from it Upham produced a plate treated by his process, and used it in printing the regular edition of the Youth's Companion for January 3, 1901. Malcolm and Anderson in material points corroborate Upham. Upham's attorney testifies that he, Upham, specifically disclosed the process of his invention to his attorney about a year before December 20, 1900, when the attorney was instructed to prepare Upham's application, and, in the spring of 1900, his attorney says that Upham submitted to him an electrotype having a graduated surface as described in his application; and the witnesses to Upham's written memorandum, which strongly confirms Upham's testimony, testified that they affixed their signatures at the date named in that instrument. It would appear that Upham may be entitled to an earlier date than that of his application, but as he was the senior party it is not essential in this case to further consider this point. We do not hesitate to affirm the decision, and we do hereby affirm the decision of the Commissioner of Patents, and the clerk of this court will certify this opinion and decision to the Commissioner of Patents in accordance with law. *Affirmed.*